# Exhibit E



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

Mr. Thomas Earle
Ms. Rue Landau
Philadelphia Commission on Human Relations
601 Walnut Street
Suite 300 South
Philadelphia, PA 19106
Via Email

Dear Mr. Earle and Ms. Landau,

I am President of the Becket Fund for Religious Liberty, and I represent Catholic Social Services for the Archdiocese of Philadelphia in this matter. Becket is the nation's leading law firm dedicated to protecting religious freedom. Our lawyers have a remarkable track record, including five Supreme Court victories in the last six years. Those cases include rulings protecting a Muslim prison inmate who was forbidden to grow a beard, Massachusetts sidewalk counselors restricted in their free speech near abortion clinics, the Little Sisters of the Poor in their challenge to the contraceptive mandate, and a Lutheran church sued for allegedly violating anti-discrimination law.[1] These decisions were unanimous. Most recently, we succeeded in forcing the Trump administration to change its discriminatory disaster relief policy after litigation on behalf of churches and synagogues damaged by hurricanes.[2]

I am writing in response to your March 16, 2018 letter concerning the foster care services provided by Catholic Social Services to the City of Philadelphia ("the City"). Your letter comes on the heels of the City's decision to suspend referrals of future foster care intakes to Catholic Social Services, a decision that is both harmful to children and families and an illegal breach of contract. While my clients are somewhat puzzled by the Commission's involvement in the matter and reserve the right to challenge its jurisdiction, they welcome this opportunity to better understand the City's goals and resolve this issue amicably so that we can continue serving children in need.

---

[1] *Holt v. Hobbs*, 135 S.Ct. 853 (2015) (9-0); *McCullen v. Coakley*, 134 S. Ct. 2518 (2014) (9-0); *Zubik v. Burwell*, 136 S.Ct. 1557 (2016) (9-0); *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012) (9-0); *see also Burwell v. Hobby Lobby*, 134 S. Ct. 2751 (2014) (5-4).
[2] *See* Letter of Solicitor General to Clerk of the Supreme Court (Jan. 3, 2018), available at https://s3.amazonaws.com/becketnewsite/17A649-Harvest-Family-Church-letter.pdf.



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / 🐦 *@BecketLaw*
www.becketlaw.org

April 18, 2018
Page 2 of 8

**The Shortage of Families**

As I'm sure you know, the City is facing an acute need for more foster families to provide homes for at-risk children. Just last month, the City sent out an "urgent" call that 300 additional families are needed for fostering,[3] and other organizations have recognized that the City faces a "crisis" because of "the lack of qualified foster parents and other placement options for the increasing number of children in care."[4] Approximately 13,000–15,000 PA children are currently in foster care and part of Pennsylvania's child welfare system,[5] and over 5,000 of those children are in Philadelphia's foster care system alone.

That is why the City relies on private agencies to help fill this shortage. In Philadelphia, there are 28 agencies who partner with the city to provide foster services.[6] Of those agencies, eight obtained additional competitive contracts with the City to also serve as a Community Umbrella Agency (CUA), an entity that works to try to help at-risk children stay in their homes where such an option would be possible and safe for the child. If that option is not available, the CUA refers the child to be placed in foster care. Agencies place children with foster families who have already undergone extensive interviews and home studies by social workers. The social workers make a recommendation that a particular foster family would be an appropriate family to care for foster children.[7] The culmination of these interviews, home studies, and recommendations includes agency certification that a

---

[3] Julia Terruso, *Philly puts out 'urgent' call – 300 families needed for fostering*, Philadelphia Inquirer, March 18, 2018, http://www.philly.com/philly/news/foster-parents-dhs-philly-child-welfare-adoptions-20180308.html.

[4] David R. Fair, Partners for Philadelphia Families Testimony to Philadelphia City Council, Turning Points for Children, (June 15, 2016), www.turningpointsforchildren.org/news/228-partners-for-philadelphia-families-testimony

[5] Pennsylvania State Resource Family Association, *Being A Foster Parent: The Facts*, https://www.psrfa.org/being-a-foster-parent/the-facts/ (last accessed April 4, 2018); in 2017, there were over 25,000 youth statewide who were at some point in Pennsylvania's out of home placement program. Pennsylvania Partnerships for Children, *2018 State of Child Welfare*, http://www.papartnerships.org/socw2018 (last accessed April 4, 2018); Pennsylvania Partnerships for Children, *2018 State of Child Welfare Data Sheets*, http://www.papartnerships.org/reports/2018_socw/source_files/Pennsylvania%202018%20SOCW.pdf (last accessed April 4, 2018).

[6] City of Philadelphia, Department of Human Services, *Foster Care Licensing Agencies (contracted by Philadelphia DHS)*, https://beta.phila.gov/media/20180402133414/DHS_Philadelphia_Foster_Care_Agencies_32818.pdf (last accessed April 4, 2018).

[7] Pa. Code § 3700.64, https://www.pacode.com/secure/data/055/chapter3700/s3700.64.html.

 

foster family is approved to care for foster children.[8] The City provides per diem payments only after an agency has accepted the referral of a child and is supervising that placement with an approved foster family.

A foster agency provides ongoing training and support and works with the assigned CUA case manager to coordinate services to the foster family, birth family and child in order to achieve a positive outcome. Foster parents are needed not only to care for children, but to provide mentoring to the birth family and support the relationship between the child and the birth family. This collaborative approach assesses the continued appropriateness of temporary placement and explores options for permanency through return to the birth family, placement with kin, or adoption.

**A Dedication to Children**

Catholic Social Services shares the City's goal of working to fill the shortage of safe homes for these vulnerable kids. Today, permanency is Catholic Social Services' number one priority, aimed at preventing children from languishing too long in uncertainty. Catholic Social Services, foster care department prioritizes permanency, and the statistics demonstrate its success—about 50 children per year either return to their families or move to adoption with their foster families.[9] Catholic Social Services' Youth Division, including St. Gabriel's System and St. Francis & St Vincent Homes, serves 1,544 youth in placement, and approximately 1,400 families per year across all of its child welfare and juvenile justice programs. As one of those programs, Catholic Social Services Foster Care currently cares for 127 children daily whom it has currently placed in foster arrangements through referrals from the City.

Catholic Social Services also provides important ancillary services to children and families. For example, Catholic Social Services, St. Gabriel's System, is certified as a Sanctuary Model of Trauma-Informed Care provider—a best practice standard now hailed nationwide. Catholic Social Services also provides educational programming via state-licensed schools at St.Gabriel's Hall, DeLaSalle Vocational

---

[8] Pa. Code §§ 3700.61, 3700.69, https://www.pacode.com/secure/data/055/chapter3700/s3700.69.html.
[9] City of Philadelphia, Department of Human Services, *Resource Parent Handbook: A Guide for Foster and Kinship Caregivers*, 11 (Sept. 26, 2017), https://beta.phila.gov/media/20170926145732/DHS-Resource-Handbook-FINAL-VERSION-small.pdf (discussing the importance of permanency for children).



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

April 18, 2018
Page 4 of 8

School and St. Francis Homes. Last year, through Catholic Social Services programs, 132 graduates received high school diplomas.

**Catholic Social Services' Religious Mission and Practices**

Catholic Social Services exists to transform lives and bring about a just and compassionate society where every individual is valued, families are healthy and strong, and communities are united in their commitment to the good of all. Catholic Social Services works towards a world touched by God's mercy: where poverty and need are alleviated and all people share justly in the blessings of creation. Catholic Social Services is dedicated to serving others in a spirit of humility and genuine concern for the well-being of its neighbors and affirms the God-given dignity and worth of every person.

The religious mission of Catholic Social Services is rooted historically in its foster work. In 1916, the Catholic Children's Bureau was established and staffed by Missionary Sisters of the Blessed Trinity, early Catholic pioneers in social work. Their work continues today through the dedicated efforts of the foster care program. This ongoing religious mission motivates the staff of Catholic Social Services to provide exemplary services to children and families in Philadelphia.

Catholic Social Services serves and places children regardless of their race, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, source of income, familial status, genetic information, or sexual violence victim status. Catholic Social Services would never stop a family who wants to foster from having the opportunity to complete the application and home study process, either through Catholic Social Services or another agency. If Catholic Social Services is unable to perform in-depth home assessments and make recommendations to the state for any reason, including consistency with its religious mission, then Catholic Social Services will refer the potential foster parent to one of 28 nearby agencies who can better serve their needs. Four agencies are located within just two miles of Catholic Social Services' downtown office.

No same-sex couples have been denied the ability to become foster parents because of Catholic Social Services, and no same-sex couples have filed complaints against Catholic Social Services regarding its provision of services.



**The City's Unlawful Suspension of Catholic Social Services' Contract**

As the Commission is aware, on March 15, 2018, the City announced that it was suspending referral of future foster care intakes to Catholic Social Services. Philadelphia Councilwoman Cindy Bass introduced a resolution March 15 authorizing "the Committee on Public Health and Human Services to investigate Department of Human Services' policies on contracting with social services agencies that either discriminate against prospective LGBTQ foster parents or allow non-LGBTQ foster parents to discriminate." On March 27, 2018, Staci Boyd, the Operations Director at the Department of Human Services, sent an email to other foster agencies in Philadelphia forbidding them from referring any additional foster intakes to Catholic Social Services.

The City's suspension of Catholic Social Services' contract is unjustified and unlawful for at least four reasons.

*First*, Catholic Social Services' foster services do not constitute a "public accommodation" under the City's Fair Practices Ordinance, and therefore it is not bound by that ordinance, nor subject to penalties or investigations pursuant to that ordinance, nor can it have violated the contract provision relating to that ordinance. Catholic Social Services does not offer, sell, or make available its services to the public that entail supervision of a child placed with an approved foster family. Phila., Pa., Admin. Code § 9-1102(1)(w). These services are only available to at-risk children who have been removed by the state and are in need of a loving home, and Catholic Social Services serves any child who is referred to them. The City only pays Catholic Social Services a per diem for these supervisory services, and the City is not contracted to compensate Catholic Social Services for anything else related to the provision of foster care.

Furthermore, the Pennsylvania Supreme Court has declined to treat a Catholic religious entity as a public accommodation because of its private, religious character. *See Roman Catholic Archdiocese of Philadelphia v. Com., Pennsylvania Human Relations Comm'n*, 119 Pa. Cmwlth. 445 (1988).

*Second*, even if Catholic Social Services' foster services did constitute a public accommodation, no "unlawful public accommodation practice" has occurred. No individual or couple has alleged that Catholic Social Services has "den[ied] or interfere[d] with the public accommodations opportunities of an individual." Nor




1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 /  @BecketLaw
www.becketlaw.org

April 18, 2018
Page 6 of 8

could they, because no allegation has been made that Catholic Social Services prevented anyone from receiving relevant city services, nor has Catholic Social Services prevented any child from being placed in a family. Courts have denied similar meritless public accommodation claims when there was not a clear allegation that an individual was actually denied services. *See, e.g.*, *Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 533 (E.D. Pa. 2014) (dismissing public accommodation claim because plaintiff had not tried to access the services).

***Third***, the City's contract with Catholic Social Services states under the relevant nondiscrimination Paragraph 15.1 that the City may "suspend or terminate" its contract with Catholic Social Services only "[i]n the event of any breach of this Section 15.1." The City has not set forth any clear basis for breach of contract prior to engaging in suspending additional referrals. Nor has it provided the notice required under the contract prior to exercising its remedies. *See* Section 12.2. As such, the City is in breach of its contract with Catholic Social Services by failing to perform and for preventing Catholic Social Services from continuing to perform without any justification.

Many state and federal courts have held that a government entity breached its contract with a private party and was subject to damages or injunctive relief when it terminated its agreement or prevented performance of a contract without being clearly "justified under state law."[10] Here, if the City continues to suspend referrals and impede Catholic Social Services' ability to perform under its contract without clear justification, the City will likewise be subject to claims for injunctive relief or monetary damages.

This breach has real-world consequences. After the City informed Catholic Social Services that it would not receive any new referrals, Catholic Social Services received a request regarding a child who had just been taken into foster care. The agency wished to place that child with his siblings, who had been placed with a family through Catholic Social Services. Responding to an urgent need, Catholic Social Services placed the child with his siblings that afternoon, and informed DHS

---

[10] *N. Penna. Legal Servs., Inc. v. Lackawanna Cty.*, 513 F. Supp. 678 (M.D. Pa. 1981); *see also, e.g., Com., Dep't of Transp. v. Brozzetti*, 684 A.2d 658, 665 (Pa. Commw. Ct. 1996) (government breached contract when it failed to justify its termination for convenience).


1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 /  @BecketLaw
www.becketlaw.org

of the placement. That placement was made in accordance with best practices and law, which favor family placement of siblings wherever possible.[11] After that placement was made, DHS sent a message to its referral partners regarding Catholic Social Services and Bethany Christian Services, stating that "NO referrals are sent to these two providers effective immediately," and demanding that all its partners affirm this directive in writing.

If a similar situation happens in the future, it appears that DHS is willing to violate its own best practices guidelines and ignore the best interests of children. Surely the City does not actually believe it would be better if Catholic Social Services had not been willing and able to place the child with his siblings.

*Fourth*, the City has been engaging in blatant unconstitutional targeting of organizations based on their religious beliefs. Despite receiving no complaints from families about the practices of Catholic Social Services, the City suspended continued foster referrals. The City cannot simply lump all religious organizations into a category of groups with beliefs the City does not agree with and punitively banish them from public service as a result. Nor can it lawfully punish Catholic Social Services for operating according to its religious beliefs—particularly in a way that has worked well, without complaint, for decades.

**Moving Forward**

Because the City has not articulated any clear breach of contract justifying a suspension of foster referrals, and because I trust the City does not wish to continue violating Catholic Social Services' rights under federal, state, and City law, I am confident that the City will quickly resume normal services and operations with Catholic Social Services to avoid mounting claims for injunctive relief and monetary damages.

In the alternative, I assume that the City will immediately provide a clear legal basis for its allegations that Catholic Social Services is in breach of its contract. Such allegations would, of course, need to explain what the City would require of

---

[11] City of Philadelphia, Department of Human Services, *Resource Parent Handbook: A Guide for Foster and Kinship Caregivers*, 7 (Sept. 26, 2017) ("[I]t is DHS policy to keep siblings—brothers and sisters—together whenever possible in the same home unless there is a very strong reason for their separation.").




1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / *@BecketLaw*
www.becketlaw.org

Catholic Social Services to come into compliance. For example, is the City requiring Catholic Social Services to promise that it will engage in detailed home assessments and make written endorsements and recommendations to the City that run contrary to Catholic Social Services' religious beliefs regarding marriage? We would need to understand exactly what tasks the City is demanding that Catholic Social Services do, and exactly what outcomes are expected, before we could evaluate the City's position.

I look forward to your response and a prompt resolution of this matter so that we can all continue our work of serving the City's most vulnerable children. These children need and deserve help, and Catholic Social Services remains eager to provide it.

Sincerely,

Mark Rienzi
President
The Becket Fund for Religious Liberty