# Exhibit G



LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

May 7, 2018

Mark Rienzi
President
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036

Dear Mr. Rienzi:

The City of Philadelphia (the "City") is in receipt of your letter dated April 18, 2018 to the Philadelphia Commission on Human Relations (the "Commission"). Mr. Earle or Ms. Landau will respond directly to you regarding the questions you raise concerning the Commission's jurisdiction. We are writing to you separately to respond to the concerns you raise regarding the City's decision to suspend new referrals from DHS to Catholic Social Services' ("CSS") family foster care program.

While we are genuinely appreciative of the invaluable services that CSS provides on the City's behalf to the City's most vulnerable children and to the resource families that care for those children, those services must be provided in a manner consistent with certain core City principles, including our non-discrimination rules. As CSS works on the City's behalf, we cannot allow discrimination against qualified couples who are ready to take on this important role, simply because of whom they choose to marry. We would not allow such discrimination against, for example, Catholic couples or "mixed-race" couples, and we cannot allow it with respect to same-sex couples, either.

You take issue in your letter with the City's ability to apply these non-discrimination rules in the context of CSS's current contract with the City. We disagree.

Nothing in CSS's existing contract obligates the City to continue to send any referrals to CSS. A review of CSS's contract For General, Kinship, and Teen Parent/Baby Resource Home Care Providers shows numerous duties on the part of CSS, but for DHS, its duty primarily is to provide CSS with support and compensation for the services that CSS performs, with no minimum guarantee or even a duty to provide *any* referrals. Without any duty to make referrals, DHS simply cannot be in breach of its contract for failure to continue making referrals.

Moreover, the City has the unilateral right under the contract to terminate or suspend the contract, regardless of any breach or lack thereof by CSS, "for any reason, including, without limitation, the convenience of the City." Professional Services Contract General Provisions ("General Provisions") ¶ 14.2. You correctly note in your letter that the City has not sent to CSS a notice of default or a notice to suspend or terminate. That is intentional, as we do not wish to make this an adversarial proceeding, and we remain hopeful that CSS will comply with its contractual obligations and will implement them in a non-discriminatory manner. Regardless, however, the City reserves the right to cancel or suspend this contract, at any time, for the City's convenience.

Of course, the City does not need to rely on its mere convenience. Section 3.21 of the General Provisions states:

> Provider shall not reject a child or family for Services based upon the location or condition of the family's residence, their environmental or social condition, *or for any other reason* if the profiles of such child or family are consistent with Provider's Scope of Services or DHS's applicable standards as listed in the Provider Agreement, unless an exception is granted by the Commissioner or the Commissioner's designee, in his/her sole discretion.

("Services" are defined at General Provisions ¶ 1.72 as "the work to be performed under this contract," which plainly includes the intake and registration of new, prospective foster parents. *See, e.g.*, Scope of Service p.4 ("Resource caregivers are screened, trained, and certified by the Provider."); *id.* at 6 ("Provider is responsible for offering training and related support to Resource Parents")). In your letter, you confirm that CSS has no intention of complying with this contractual obligation to provide Services to *all* qualified families, as you have clearly re-affirmed that CSS intends to reject families for Services based solely on the fact that they are same-sex couples. That is not a permissible reason for rejection under either the Scope of Services set forth in the contract or under DHS's applicable standards, and the Commissioner has no intention of granting an exception.

Indeed, as you know, the refusal to provide Services to same-sex couples constitutes a violation of a fundamental City policy to provide services to *all* qualified families. We cannot allow a provider, acting under a City contract, to inform a qualified family who wants to give of its time, resources, and home, in order to protect vulnerable children, that they must go elsewhere to make this contribution, solely because our contractual provider disapproves of their familial relationship. The City maintains an important policy that all resource families be treated equally, so long as they meet the agreed-upon eligibility requirements. We recognize that CSS's values and the City's values may diverge here, but CSS is contracting with the City, not free-lancing, and the ultimate responsibility for managing this foster care program belongs to the City. We have to insist that all services provided as part of this program are provided in a manner that is consistent with our conception of equality.

Moreover, and independent of the foregoing, CSS's refusal to provide services to same-sex couples is a violation of law. CSS falls squarely within the definition of a "public accommodation" under the City's Fair Practices Ordinance, Phila. Code § 9-1102(1)(w), as CSS is, *inter alia*, a "provider . . . whose . . . services . . . are . . . made available to the public." You focus on CSS's admirable provision of services to *the children*, but the contract indisputably also requires CSS to provides services *to the foster families*, including certification, support, re-evaluation, and training to *any* family that meets state regulations and DHS standards and wishes to provide badly needed foster care.

Please be assured that we have not targeted your client on the basis of its religious beliefs. As we explained, our motivation arises from our concern that all families in this City be treated equally with respect to all opportunities and services that are available to them. We respect your sincere religious beliefs, but your freedom to express them is not at issue here where you have chosen voluntarily to partner with us in providing government-funded, secular social services. The Commonwealth has set eligibility standards for prospective foster parents. It is inappropriate (and arguably unconstitutional) for us to allow a provider to add its own requirements for foster parents that are rooted in religious doctrine, and which clash with the constitutional requirement that we treat all marriages/families equally. Nor can we allow you to refuse service to an otherwise eligible family by referring them to another agency.

Please also note that CSS's current contract expires on June 30, 2018, and the City is under no legal obligation to enter into a new contract for any period thereafter. We are hopeful that we can work out any differences before then, but please be advised that -- except where the best interests of a child demands otherwise -- the City does not plan to agree to any further referrals to CSS, and the City intends to assist with the transition of foster families to other agencies, absent assurances that CSS is prepared to adhere to its contractual obligations and, in implementing its City contract, to comply with all applicable laws, including those relating to non-discrimination. We believe our current contract with CSS is quite clear that this is our right, but please be advised that any further contracts with CSS will be explicit in this regard.

Family equality is both a legal requirement, and an important City policy and value that must be embodied in our contractual relationships. If CSS cannot come into compliance, we are prepared to enter into an interim, contractual relationship with CSS in order for CSS to continue to supervise the foster children in its care properly with the least amount of disruption for them, while the transition to other agencies is completed. On a related note, contrary to the discussion in your letter regarding DHS's practice concerning siblings, because the best interests of the children in our care are paramount, we did recently grant an exception to the cessation of CSS referrals in that instance to ensure that siblings were placed together, and we expect that the best interests of the children will remain paramount throughout any transition.

In closing, we do not wish to see our valuable relationship with CSS regarding foster care services come to an end. We are hopeful that CSS will be prepared to commit to comply with the letter and spirit of CSS's contractual obligations and the Fair Practices Ordinance by

committing to provide foster care services on a non-discriminatory basis to all families that meet the City's standards. Please let me know as soon as possible whether CSS is prepared to comply with these standards. Alternatively, please let me know with whom I should be in contact for purposes of promptly negotiating a transition plan.

Thank you for your understanding and your client's work with children and families.

Sincerely,

Valerie M. Robinson

Valerie Robinson
Chair, Corporate and Tax Group


cc: Rue Landau, Executive Director Philadelphia Commission on Human Relations

Cynthia Figueroa, Commissioner, Department of Human Services

Marcel S. Pratt, City Solicitor