**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

SHARONELL FULTON, *et al.*,

             Plaintiffs,

             v.

CITY OF PHILADELPHIA, *et al.*,

             Defendants.

_____

No. 2:18-cv-02075

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE SUPPORT
CENTER FOR CHILD ADVOCATES AND PHILADELPHIA FAMILY PRIDE TO
INTERVENE AS DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

BACKGROUND .................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      CHILD ADVOCATES AND PFP ARE ENTITLED TO INTERVENE AS OF
        RIGHT UNDER RULE 24(A)..................................................................................... 2

        A.      The Motion to Intervene Is Timely.................................................................. 3

        B.      Proposed Intervenors Have a Sufficient Interest that Could Be Impaired by
                the Disposition of this Lawsuit. ...................................................................... 3

                1.      This Lawsuit Threatens the Interests of Child Advocates. ....................... 4

                2.      This Lawsuit Threatens the Interests of PFP. ........................................... 5

        C.      The City Cannot Adequately Represent the Interests of Child Advocates or
                PFP, or the Children and Families They Serve...................................................7

II.     ALTERNATIVELY, THE COURT SHOULD ALLOW CHILD ADVOCATES
        AND PFP TO INTERVENE UNDER RULE 24(B)(1). ................................................ 10

CONCLUSION.................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Farm Bureau Fed. v. Env. Protection Agency*,
278 F.R.D. 98 (M.D. Pa. 2011)......................................................................4, 7, 8

*Arizona v. California*,
460 U.S. 605 (1983), *decision supplemented*, 466 U.S. 144 (1984).......................11

*Associated Dog Clubs of N.Y. State v. Vilsack*,
44 F. Supp. 3d 1 (D.D.C. 2014)...............................................................................4

*In re Community Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)......................................................................................2

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
172 F.3d 104 (1st Cir. 1999)...................................................................................12

*Herdman v. Town of Angelica*,
163 F.R.D. 180 (W.D.N.Y. 1995)..............................................................................4

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998)............................................................................3, 7, 9

*Larkin v. Grendel's Den Inc.*,
459 U.S. 116 (1982)...................................................................................................9

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)........................................................................................3

*Pa. Gen. Energy Co., LLC v. Grant Twp.*,
No. 14-209, 2015 WL 6002163 (W.D. Pa. Oct. 14, 2015), *aff'd*, 658 F. App'x
37 (3d Cir. 2016)......................................................................................................11

*Palmore v. Sidoti*,
466 U.S. 429 (1984).................................................................................................10

*Pennsylvania v. President, United States of America*,
888 F.3d 52 (3d Cir. 2018)................................................................................3, 4, 7

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) .................................................................................10

*Shipyard Assocs., L.P. v. City of Hoboken*,
No. CIV.A. 14-1145 CCC, 2014 WL 6685467 (D.N.J. Nov. 26, 2014) ..................4

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991) .................................................................................8

*Brody ex rel. Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992) ................................................................................4

*Teen Ranch, Inc. v. Udow*,
    479 F.3d 403 (6th Cir. 2007) ................................................................................9

*Estate of Thornton v. Caldor Inc.*,
    472 U.S. 703 (1985) ............................................................................................10

*U.S. v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) .................................................................................3

*Wallach v. Eaton Corp.*,
    837 F.3d 356 (3d Cir. 2016) .................................................................................3

*Whitewood v. Wolf*,
    992 F. Supp. 2d 410 (M.D. Pa. 2014) .................................................................10

*Wild Equity Institute v. City and County of San Francisco*,
    No. C11-00958, 2011 WL 2532436 (N.D. Cal. June 24, 2011) .............................8

*Wildearth Guardians v. Salazar*,
    272 F.R.D. 4 (D.D.C. 2010) .................................................................................5

**Statutes**

42 Pa. Cons. Stat. Ann. § 6300 *et seq.* ............................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 24 ........................................................................1, 11

The Support Center for Child Advocates (Child Advocates) and Philadelphia Family Pride (PFP) have moved to intervene in this case as defendants as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, for permissive intervention under Rule 24(b)(1). Child Advocates and PFP submit this Memorandum of Law in support of their Motion to Intervene.

<u>**Background**</u>

As the Court knows from the papers that the parties and the proposed intervenors have already filed, Catholic Social Services (CSS) contracts with the City of Philadelphia Department of Human Services (DHS or City) to find families for children in Philadelphia's foster care system.

Earlier this year, after learning that CSS had a policy of refusing to license qualified same-sex couples to be foster parents or place children in the homes of same-sex couples, the City stopped making new foster care referrals to CSS. The City advised CSS that its exclusion of same-sex couples violated CSS's contract with the City.

CSS and some of its foster families brought this lawsuit challenging the suspension of foster care referrals. Plaintiffs claim the City is legally obligated to continue referring foster care cases to CSS despite its refusal to comply with DHS contract provisions.

Child Advocates and PFP seek to intervene as defendants. Both organizations have interests that will be directly and significantly impacted by the disposition of this case. Child Advocates represents individual children in the foster care system as court-appointed counsel or guardian *ad litem* and advocates for public policy to advance the interests of children in the public child welfare system, including children needing foster care placement. Declaration of Frank P. Cervone ("Cervone Decl.") ¶¶ 3, 4. PFP is a membership organization of LGBTQ+ parents and prospective parents, and their members include same-sex couples who seek to foster

children in Philadelphia.  Declaration of Stephanie Haynes ("Haynes Decl.") ¶¶ 2, 3.  PFP

advocates to protect the interests of same-sex couples and their children, including the right to

equal treatment of those seeking to care for children in the public child welfare system.  Haynes

Decl. ¶ 4.  PFP also is committed to helping recruit foster parents from the LGBTQ+ community,

and has expended significant resources in that effort.  Haynes Decl. ¶ 5.

If Plaintiffs prevail in this lawsuit, it would cause significant harm to proposed

intervenors and the constituents they represent.  If this Court accepts Plaintiffs' position that the

City is legally required to permit contract agencies to turn away qualified prospective foster

families headed by same-sex couples if they have religious objections to such families, the

children in the foster care system whose interests Child Advocates represent will be denied

access to families who could meet their needs.  Cervone Decl. ¶ 23.  It would also subject PFP

members to discrimination in their pursuit of fostering, and the risk of such discrimination would

impair PFP's efforts to recruit LGBTQ+ foster parents.  Haynes Decl. ¶¶ 14-16.  Both

organizations would have to expend additional resources as a result of a ruling for Plaintiffs.

Cervone Decl. ¶ 26; Haynes Decl. ¶ 16.  The Court should allow Child Advocates and PFP to

intervene as defendants to protect their vital interests in this dispute.

## Argument

## I.     Child Advocates and PFP Are Entitled to Intervene as of Right Under Rule 24(a).

To intervene as of right, a prospective intervenor must establish: (1) the application for

intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the asserted

interest may be affected or impaired as a practical matter by the disposition of the action; and (4)

the interest is not adequately represented by an existing party in the litigation.  Fed. R. Civ. P.

24(a)(2); *In re Community Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005).  "Rule 24 demands

flexibility when dealing with the myriad situations in which claims for intervention arise."

2

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).  Proposed intervenors meet each of these criteria.

> **A.      The Motion to Intervene Is Timely.**

Courts in this Circuit should consider the "totality of the circumstances" when deciding the timeliness of a motion to intervene.  *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016).  Factors to consider include: (1) the stage of the proceedings; (2) whether intervention would result in prejudicial delay to the parties to the case; and (3) the reason for the intervening party's delay in filing its Motion after it learned or should have learned of its right to intervene. *Id.* at 371, 376-77.  A motion to intervene surely is timely when the proceedings have barely begun and the applicant filed its motion promptly after learning of the lawsuit.  *See, e.g., Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).  Here, as in *Mountain Top*, Child Advocates and PFP "promptly sought intervention upon learning their interests were in jeopardy."  *Id.* at 370.

Plaintiffs filed their Complaint less than a month ago; the City has not responded to the Complaint; there has been no discovery; and the case has not resolved by court decree or settlement.[1]  This motion is timely.

> **B.      Proposed Intervenors Have a Sufficient Interest that Could Be Impaired by the Disposition of this Lawsuit.**

Proposed intervenors may intervene as of right because they have a "cognizable legal interest" that "may be affected or impaired[] as a practical matter by the disposition of the action."  *Pennsylvania v. President, United States of America*, 888 F.3d 52, 58-59 (3d Cir. 2018)

---

[1]  Courts have allowed intervention far into litigation.  *See*, *e.g.*, *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182 (3d Cir. 1994) (holding intervention was timely even four years after the complaint was filed).

(citations omitted) (alteration in original).  An interest is "legally cognizable" if it is specific, capable of definition, and "will be affected in a substantially concrete fashion by the relief sought."  *Id.* at 58 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)). When deciding whether that interest is "in jeopardy in the lawsuit,"  "[the] focus is on the 'practical consequences' of the litigation."  *Pennsylvania*, 888 F.3d at 59 (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122-23 (3d Cir. 1992)).  Intervention is appropriate when there is a "tangible threat to the applicant's legal interest."  *Brody*, 957 F.2d at 1123.  Courts have routinely recognized that nonprofit organizations have the right to intervene to protect interests that are significant to the organization's mission.[2]

Child Advocates and PFP have specific, legally cognizable interests that this action threatens to impair.

### 1.    This Lawsuit Threatens the Interests of Child Advocates.

Child Advocates is a nonprofit organization that provides legal representation and social services to children.  Cervone Decl. ¶ 3.  Child Advocates is appointed by the Family Court of Philadelphia under the auspices of the Pennsylvania Juvenile Act to serve as counsel and guardian *ad litem* for individual children in various types of court proceedings, including

---

[2] *See, e.g.*, *Shipyard Assocs., L.P. v. City of Hoboken*, No. CIV.A. 14-1145 CCC, 2014 WL 6685467, at *2-4 (D.N.J. Nov. 26, 2014) ("nonprofit organization comprised of Hoboken residents focused on issues such as open space preservation and recreation along the Hudson River waterfront in Hoboken" permitted to intervene as of right in lawsuit challenging Hoboken ordinance prohibiting riverside construction); *Am. Farm Bureau Fed. v. Env. Protection Agency*, 278 F.R.D. 98, 111 (M.D. Pa. 2011) (environmental groups satisfied standard for intervention as of right in suit challenging EPA water quality standards); *Associated Dog Clubs of N.Y. State v. Vilsack*, 44 F. Supp. 3d 1, 2 (D.D.C. 2014) (Humane Society permitted to intervene as of right in a lawsuit challenging a rule that extended the licensing requirements of the Animal Welfare Act to online pet dealers in order to protect its interest in preventing animal cruelty); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 186-88 (W.D.N.Y. 1995) (environmental group permitted to intervene as of right to defend a law regulating waste facilities).

dependency proceedings for children in foster care.  42 Pa. Cons. Stat. Ann. § 6300 *et seq*.;

Cervone Decl. ¶ 4.   In the last fiscal year (ending June 30, 2017), Child Advocates represented

1,100 children.  Cervone Decl. ¶ 5.  Child Advocates also advocates for public policy that

furthers the well-being of children in the foster care system.  *Id.* ¶ 3.

Plaintiffs' challenge to the City's enforcement of its contractual provisions barring

discrimination against prospective foster parents threatens Child Advocates' interest in ensuring

that children in the system have access to the largest and broadest possible pool of qualified

foster parents, and that critical decisions about what foster homes are appropriate for individual

children are based solely on considerations about what is in the child's best interests, rather than

an agency's religious beliefs.  *Id.* ¶¶ 17-22.  If CSS is permitted to turn away qualified

prospective foster parents in same-sex relationships, this will mean that some of the children

whose interests are represented by Child Advocates may be denied a loving home with the

family that may be best matched to meet the child's needs.  *Id.* ¶ 23.  If Plaintiffs prevail in this

litigation, Child Advocates may have to expend additional resources or divert resources in order

to fix the problems that will arise if religious tests can govern child placement decisions and to

deal with the damage that may result to children and their well-being.  *Id.* ¶ 26; *cf. Wildearth*

*Guardians v. Salazar*, 272 F.R.D. 4, 19 (D.D.C. 2010) (permitting intervenor to intervene as

defendant where if plaintiffs prevailed, intervenor would be required "to expend additional time

and resources, with the ultimate outcome uncertain").  Accordingly, Child Advocates is entitled

to intervene as of right to protect its interests.

### 2.      This Lawsuit Threatens the Interests of PFP.

Philadelphia Family Pride (PFP) is a nonprofit membership organization of LGBTQ+

parents and prospective parents (including foster and adoptive parents), and their children.

Haynes Decl. ¶ 2.  PFP members include same-sex couples who seek to foster children in

Philadelphia. *Id. ¶ 3.* It is PFP's mission to protect the interests and rights of LGBTQ+ couples and their families, including the right to equal treatment of those seeking to care for children in the public child welfare system. *Id. ¶ 4.* In addition, in partnership with the City, PFP recruits prospective foster parents from the LGBTQ+ community to help address the significant need for qualified, licensed placement options in Philadelphia's child welfare system, including more supportive placement options for LGBTQ+ children. *Id. ¶¶ 5-6.* Over the past year, PFP has held five recruitment events attended by approximately 66 prospective foster parents, and has more recruitment events planned for 2018, including one in August. *Id. ¶ 8.*

Plaintiffs' lawsuit, if successful, would significantly impair PFP's specific, legally cognizable interests in two ways.

First, a ruling in favor of Plaintiffs would mean that CSS and any other contracting agencies that have religious objections to same-sex couples would be free to turn away same-sex couples seeking to become foster parents or refuse to place children with these families. This would create obstacles for PFP members who wish to welcome foster children into their homes, and subject them and their families to the harm and stigma of discrimination. Haynes Decl. ¶¶ 13-16. PFP is entitled to intervene to prevent such harm to its members.

A ruling in favor of Plaintiffs would also harm PFP by undermining its efforts to recruit foster families from the LGBTQ+ community. If the ruling in this case establishes that contract agencies have the right to exclude same-sex couples based on their religious beliefs, families from the LGBTQ+ community who would be interested in becoming foster parents may be deterred from doing so; understandably, they may decide to avoid subjecting themselves and their families to that kind of discriminatory treatment. Haynes Decl. ¶ 1. PFP will have to expend additional resources on their recruitment efforts in order to overcome the deterrent effect

of a ruling in favor of Plaintiffs.  Haynes Decl. ¶ 16.  PFP is entitled to intervene to protect its

efforts to recruit LGBTQ+ foster families for Philadelphia children.

C. **The City Cannot Adequately Represent the Interests of Child Advocates or PFP, or the Children and Families They Serve.**

The burden of demonstrating inadequacy of representation is generally "treated as

minimal" and requires showing only that the existing party "may" not adequately represent the

putative intervenor's interests.  *E.g.*, *Pennsylvania*, 888 F.3d at 60.  Although, in the Third

Circuit, courts generally presume that a proposed intervenor's interests are adequately

represented if the proposed intervenor is seeking the same outcome as a government entity, *e.g.*,

*Kleissler*, 157 F.3d at 972, and courts have recognized a broad range of circumstances that

warrant deviation from this presumption and justify intervention on the side of the government.

Child Advocates and PFP can easily satisfy this burden of demonstrating that there is

"reasonable doubt" as to whether the City will adequately represent their interests or those of the

children or families whom the organizations serve.  *Kleissler*, 157 F.3d at 967.

First, courts have acknowledged that government entities may not adequately represent

the interests of nonprofit organizations seeking to intervene on the government's side in

litigation that implicates a broad range of issues and might require the government to take

unpopular opinions or compromise among competing interests.  For example, in *American Farm*

*Bureau*, the Court found that the intervenor-defendants, environmental groups, were not

adequately represented by the government because the issues in the litigation made it likely that

the government might want to compromise among a wide range of affected interests.  *Am. Farm*

*Bureau Fed.*, 278 F.R.D. at 111.  The Court observed that the government "must consider not

only the interests of the public interests groups, but also the possibly conflicting interests from

agriculture, municipal stormwater associations, and land developers," and that this

"incongruence of interests may lead EPA to settle or otherwise resolve this litigation in a matter unfavorable to [proposed intervenors'] interests, or may dissuade EPA from appealing a decision that adversely affects [proposed intervenors'] interests." For these reasons, the Court concluded that the intervenors' interests were not adequately represented. *Id*. at 112.

Similarly, in *Wild Equity Institute v. City and County of San Francisco*, No. C11-00958, 2011 WL 2532436 (N.D. Cal. June 24, 2011), the plaintiffs sued the City of San Francisco contending that the City's operation of a particular golf course violated the Endangered Species Act. A nonprofit organization promoting public golf courses (SFPGA) sought to intervene as a defendant. In ruling that the SFPGA could intervene as of right, the court pointed out that many San Francisco residents might actually agree with the plaintiffs' position, as a consequence of which "[the City] may not necessarily be willing to make the same arguments as SFPGA would [make]." *Id.* at *3. As a result, SFPGA was permitted to intervene as of right. *See also In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (in reversing denial of intervention of environmental organization seeking to help defend environmental regulations, court explained that the organization, unlike the state, "does not need to consider the interests of all South Carolina citizens" or consider the union's interest).

In this case, the City may not adequately represent the interests of Child Advocates and PFP because the City has broader and different interests than proposed intervenors, and may have incentives to compromise among those competing interests, which may result in it taking different positions than Child Advocates and PFP would take. While the City has an interest in promoting the well-being of children in the foster-care system and in preventing discrimination against its residents—interests shared by Child Advocates and PFP, respectively—the City has a separate interest in being able to enforce its contracts with contractors such as CSS that is not

shared by the proposed intervenors.  The City's competing contractual, political, and

governmental interests could affect its litigation position.  *See, e.g.*, *Kleissler*, 157 F.3d at 973-74

("the government represents numerous complex and conflicting interests . . ." and the

"straightforward" interests of intervenors "may become lost in the thicket of sometimes

inconsistent governmental policies").

Moreover, the City's litigation positions may be subject to change in accordance with

changes to the composition, power, and policy views of its officials.  *Kleissler*, 157 F.3d at 974

("it is not realistic to assume that the [government] agency's programs will remain static or

unaffected by unanticipated policy shifts").

Child Advocates and PFP should be permitted to intervene in order to vigorously defend

their interests, without being burdened by the competing pressures on the City, and to protect

their organizations' interests from possible compromise.  Cervone Decl. ¶ 27; Haynes Decl. ¶ 19.

Finally, proposed intervenors intend to present the Court with arguments that do not

appear to be the main focus of the City's defense—that if the City were to adopt the policy that

Plaintiffs seek, it would violate the Establishment Clause and the Equal Protection rights of PFP

members.  *See generally* The City of Philadelphia's Memorandum of Law in Opposition to

Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 20.

Specifically, proposed intervenors would provide the court with a full analysis of why allowing

government-contracted agencies to use religious screening criteria in providing public foster care

services violates the Establishment Clause.  They would explain why it would impermissibly:  i)

delegate a government function to a religious organization while allowing that government

function to be performed using religious standards, *see Larkin v. Grendel's Den Inc.*, 459 U.S.

116 (1982); ii) use government funds for religious purposes, *see Teen Ranch, Inc. v. Udow,* 479

F.3d 403 (6th Cir. 2007); and iii) privilege religious beliefs to the detriment of third parties. *See Estate of Thornton v. Caldor Inc.*, 472 U.S. 703 (1985).

Proposed intervenors would also provide a full legal analysis of why the City would violate the Equal Protection Clause if it allowed its contract agencies to exclude prospective families headed by same-sex couples based on their religious beliefs. They will address the application of heightened equal protection scrutiny to discrimination based on sexual orientation, *see Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014); such a policy's violation of equal protection under any level of scrutiny; and the equal protection prohibition against government deference to others' desire to discriminate. *See, e.g. Palmore v. Sidoti*, 466 U.S. 429 (1984). They would also provide evidence demonstrating the harm of the unequal treatment. *See, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) (wildlife organizations met their burden of showing that the government may not adequately represent their interests in light of the risk that the government would not necessarily make all of the wildlife organizations' arguments and the fact that the organizations' perspectives offered "a necessary element to the proceedings that would be neglected").

For all these reasons, Child Advocates and PFP have met the minimal burden of demonstrating that the City may not adequately represent their interests.

## II.    Alternatively, the Court Should Allow Child Advocates and PFP to Intervene Under Rule 24(b)(1).

If the Court denies Child Advocates' and PFP's motion to intervene as of right under Rule 24(a), the Court should exercise its discretion to permit Child Advocates and PFP to intervene under Rule 24(b). A court may grant permissive intervention on a timely motion where the movants have "a claim or defense that shares with the main action a common question of law or fact" and the intervention will not unduly "delay or prejudice adjudication of the

original parties' rights." F.R.C.P. 24(b)(1)(B), 24(b)(3).  In addition, a court should also

consider "whether intervention is necessary to protect rights that are not identical to an existing

party." *Pa. Gen. Energy Co., LLC v. Grant Twp*., No. 14-209, 2015 WL 6002163, at *2 (W.D.

Pa. Oct. 14, 2015), *aff'd*, 658 F. App'x 37 (3d Cir. 2016) (citation omitted).  Where a proposed

intervenor's interests "are directly affected by the outcome of [the] litigation and . . . those

interests are not identical to [the parties], permissive intervention is appropriate." *Pa. Gen.

Energy Co.*, 2015 WL 6002163, at *3.

All of these factors weigh in support of allowing permissive intervention by Child

Advocates and PFP under Rule 24(b) if the Court does not grant them intervention as of right

under Rule 24(a).

As discussed above, the motion to intervene was filed very early in this litigation.  As

such, allowing proposed intervenors to intervene in this case would not delay or prejudice the

adjudication of the original parties' rights.

Child Advocates' and PFP's defense shares common questions of law or fact with the

main action.  Significantly, the parties' and the putative intervenors' defenses all ultimately turn

on the question of whether CSS has a right to continue its stated policy of rejecting qualified

same-sex couples from becoming licensed foster parents and refusing to place children with

qualified same-sex couples.

And Child Advocates' and PFP's intervention is necessary to protect rights that, as

discussed above, are not identical to the City's rights.  Their "participation in litigation critical to

their welfare should not be discouraged." *Arizona v. California*, 460 U.S. 605, 615 (1983),

*decision supplemented*, 466 U.S. 144 (1984).

Indeed, the Court will benefit from their participation.  This is a case of great importance, and Child Advocates' and PFP's participation in this case will ensure that all of the relevant stakeholders' interests and arguments are fully aired before the Court, thus protecting the rights of the original parties as well as the children and same-sex couples whose interests are represented by Child Advocates and PFP.  *Cf. Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999) ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.").

For all of the foregoing reasons, even if the Court denies Child Advocates' and PFP's motion to intervene as of right under Rule 24(a), the Court should permit Child Advocates and PFP to intervene under Rule 24(b).

## Conclusion

For the foregoing reasons, Child Advocates and PFP respectfully request that the Court grant their motion to intervene as of right under Rule 24(a), or in the alternative, permit them to intervene under Rule 24(b).

Dated: June 15, 2018

_____

Molly Tack-Hooper (PA 307828)
Mary Catherine Roper (PA 71107)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
Tel.: (215) 592-1513 ext. 113
Fax: (215) 592-1343
mtack-hooper@aclupa.org
mroper@aclupa.org

Leslie Cooper*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004

12

(212) 549-2584
lcooper@aclu.org
*Admitted pro hac vice*

Fred T. Magaziner (PA 23332)
Catherine V. Wigglesworth (PA 314557)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Phone:  (215) 994-4000
Fax:  (215) 994-2222
fred.magaziner@dechert.com
catherine.wigglesworth@dechert.com

Frank P. Cervone (PA 37338)
Support Center for Child Advocates
1617 John F. Kennedy Blvd., #1200
Philadelphia, PA 19103
(267) 546-9202
fcervone@SCCAlaw.org

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the foregoing memorandum of law, declarations, and proposed answer in support of the Motion of the Support Center for Child Advocates and Philadelphia Family Pride to Intervene As Defendants were filed electronically and served on all counsel of record via the ECF system of the United States District Court for the Eastern District of Pennsylvania.

Dated: June 15, 2018                            */s/ Molly Tack-Hooper*