

1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

June 27, 2018
Page 1 of 4


The Honorable Petrese B. Tucker
United States District Court for the Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

VIA ECF

Re: *Fulton v. City of Philadelphia*, No. 18-2075

Dear Judge Tucker:

   Plaintiffs write to alert the Court of the Supreme Court's recent decision in *National Institute of Family and Life Advocates v. Becerra*, No. 16-1140, 585 U.S. ___ (2018) ("*NIFLA*"), which supports Plaintiffs' position that the City's efforts to compel Catholic Social Services to provide written endorsements of same-sex marriages violates the First Amendment's prohibition on compelled speech.

   In *NIFLA*, the Supreme Court invalidated two California regulations that required pregnancy centers to provide clients with information concerning public healthcare programs that offer abortions and to prominently post disclaimers regarding the scope of services that the centers provided. The opinion in *NIFLA* provides guidance here in two respects.

   First, in *NIFLA* the Supreme Court emphasized that any government-imposed requirement that a private entity "speak a particular message" that would "alter the content of their speech" is a content based restriction on speech and thus subject to strict scrutiny. Slip Op. at 7 (internal quotation marks omitted). In other words, *NIFLA* clarifies that speech requirements that dilute or alter the message that organizations wish to express (or wish not to express) pose unique threats to the marketplace of ideas.

   Just as forcing the centers in *NIFLA* to promote abortion services altered the content of their speech, so too would requiring a Catholic foster agency to agree to provide formal written endorsements of a relationship if those endorsements are inconsistent with the agency's sincere religious beliefs about marriage. Catholic Social Services provides its services in accordance with the teachings of the Catholic



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

June 27, 2018
Page 2 of 4

Church. Transcript of Pretrial Hearing (Tr.), Day 2, Amato, pp. 43-45. But the City is attempting to force Catholic to agree to violate its religious beliefs about marriage as a condition of continuing to provide foster care services to the City's most vulnerable children. The City's efforts to use the threatened termination of foster care services in order to compel Catholic to "speak a particular message" are prohibited by the First Amendment.

As Justice Kennedy clarified in his concurrence, a policy requiring religious agencies to voice the Government's "own message in the place of individual speech, thought, and expression" is also a problematic form of viewpoint discrimination. Kennedy Op. at 1. Justice Kennedy's concurrence also emphasized that the Constitution forbids policies that require private actors to "promote the [government]'s own preferred message" and to "contradict their most deeply held beliefs, beliefs grounded in basic philosophical, ethical, or religious precepts." Such policies "imperil[]" the "liberties" of "freedom of thought and belief" and are contrary to the constitution. *Id.* This is precisely what would happen if Catholic Social Services were compelled to endorse same-sex marriage by certifying a home study for a same-sex couple—Catholic would be forced to speak "the [City]'s own preferred message," *id.*, rather than its own.

Second, the Supreme Court emphasized that governments do not gain "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." Slip Op. at 14. The use of licensing requirements to stifle speech "pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information." Slip Op. at 12 (quoting *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). Such licensing restrictions also run the risk of stifling the "uninhibited marketplace of ideas in which truth will ultimately prevail" by allowing the government to "decid[e] which idea should prevail" and creating a false appearance of consensus. Slip Op. at 13 (internal quotation marks omitted).

This concern about government use of licensing requirements to conscript the unwilling speech of Catholic is particularly relevant here, where Catholic was performing its religious exercise of providing foster services to vulnerable children in Philadelphia long before any government license or program was attached to these services. Tr., Day 2, Amato, pp. 35-36. The Government now mandates Catholic have a contract with the City to perform this service, and then conditions the



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

June 27, 2018
Page 3 of 4

continued performance under that contract on Catholic's willingness to espouse a view that contradicts its deeply held religious beliefs. This is precisely the sort of "unfettered power" that the First Amendment prohibits.

        Respectfully submitted,

        /s/ Mark Rienzi
        Mark Rienzi
        *Counsel for Plaintiffs*



1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
202-955-0095 / @BecketLaw
www.becketlaw.org

June 27, 2018
Page 4 of 4

## Certificate of Service

I hereby certify that this letter has been served electronically via ECF and is available for viewing and downloading from the ECF system.

/s/ Mark Rienzi
Mark Rienzi