UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARONELL FULTON, CECELIA PAUL, TONI LYNN SIMMS-BUSCH, and CATHOLIC SOCIAL SERVICES,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF PHILADELPHIA, DEPARTMENT OF HUMAN SERVICES FOR THE CITY OF PHILADELPHIA, and PHILADELPHIA COMMISSION ON HUMAN RELATIONS,<br><br>*Defendants*. | Civil Action No. 18-2075 |

**MEMORANDUM OF LAW IN OPPOSITION TO EMERGENCY
MOTION TO INTERVENE BY SUPPORT CENTER FOR CHILD ADVOCATES AND
PHILADEPHIA FAMILY PRIDE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

STATEMENT OF THE LAW ................................................................................................. 2

ARGUMENT ............................................................................................................................ 2

    I.    Advocates have no interest in this litigation and will not be affected by the outcome ................................................................................. 2

    II.   The City of Philadelphia can adequately defend the proposed intervenors' purported interests ................................................................... 5

    III.  Advocates have no grounds for permissive intervention. .............................................. 8

CONCLUSION ......................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*,
  323 F.R.D. 54 (D.D.C. 2017) ................................................................................................6

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005) ..................................................................................................2

*Gaskin v. Pennsylvania*,
  No. 94-4048, 1995 WL 329039 (E.D. Pa. May 26, 1995) .....................................................6

*Harris v. Pernsley*,
  820 F.2d 592 (3rd Cir. 1987) ................................................................................................2

*Jarzyna v. Home Props., L.P.*,
  201 F. Supp. 3d 650 (E.D. Pa. 2016) ....................................................................................8

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) ........................................................................................... 3, 6-7

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ................................................................................................3

*Pa. Gen. Energy Co., LLC v. Grant Twp.*,
  658 F. App'x 37 (3d Cir. 2016) .........................................................................................6, 7

*Pennsylvania v. President United States of Am.*,
  888 F.3d 52 (3d Cir. 2018) ..........................................................................................5, 6, 7

*Brody ex rel. Sugzdinis v. Spang*,
  957 F.2d 1108 (3d Cir. 1992) ...............................................................................................3

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ................................................................................................4

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ................................................................................................6

*United States v. Territory of Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014) ..................................................................................... 4, 5, 6, 8

*Universal Athletic Sales Co. v. Am. Gym,
  Recreational & Athletic Equip. Corp., Inc.*,
  546 F.2d 530 (3d Cir. 1976) .................................................................................................7

*Veasey v. Perry*,
   577 F. App'x 261 (5th Cir. 2014) ...........................................................................................6

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016)............................................................................................2, 5

*Benjamin ex rel. Yock v. Dep't Pub. Welfare*,
   701 F.3d 938 (3d Cir. 2012)......................................................................................... 2-3, 4

**Rules**

Fed. R. Civ. P. 24................................................................................................................1, 2, 8

## INTRODUCTION

The Support Center for Child Advocates and Philadelphia Family Pride (collectively, "Advocates") fall far short of satisfying the requirements for either intervention as of right or permissive intervention under Federal Rule of Civil Procedure 24. Advocates have no interest in this litigation, can identify no same-sex couple—much less a same-sex couple affiliated with their organizations—who has ever been negatively impacted by Catholic Social Services' ("Catholic") foster care program, and will continue their own work uninterrupted no matter how this Court rules. Advocates warn that preserving the status quo and allowing Catholic to serve the community in accordance with its beliefs will have harmful consequences, but Advocates have not articulated a single harm caused by maintaining the same agreement that has been in place for over 50 years.

Even if Advocates did have a direct interest in this litigation, that interest would be adequately represented by the City of Philadelphia. In fact, the positions taken by Advocates and the City are so perfectly aligned that the City selected the executive director of Support Center for Child Advocates as its sole expert witness called to articulate the City's theory of harm in this case.[1] Thus, to the extent Advocates have even a conceivable interest in this case, they cannot demonstrate any meaningful way in which this interest is distinguishable from that of the City.

Advocates should also be denied permissive intervention under Federal Rule of Civil Procedure 24(b), because they have no claim or defense that "shares . . . a common question of law or fact" with the City. Fed. R. Civ. P. 24(b).

For these reasons, the motion should be denied.

---

[1] Transcript of Preliminary Injunction Hearing ("Tr."), Day 3, Cervone, pg. 153.

1

**STATEMENT OF THE LAW**

Parties unrelated to ongoing litigation may only intervene as a matter of right if they can demonstrate "an interest relating to the property or transaction that is the subject of the action, and [are] so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Intervention is granted only if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Wallach v. Eaton Corp.*, 837 F.3d 356, 372 n.18 (3d Cir. 2016). "[E]ach [element] must be met." *Harris v. Pernsley*, 820 F.2d 592, 596 (3rd Cir. 1987).[2]

Additionally, unrelated parties that cannot intervene as a matter of right may be granted permissive intervention only if they demonstrate "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

**ARGUMENT**

**I. Advocates have no interest in this litigation and will not be affected by the outcome.**

Advocates do not have a direct interest in this litigation, or any interest that differentiates them from the public at large. Interests sufficient for intervention as of right must be "significantly protectable": that is, they are "specific to those seeking to intervene, [] capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Benjamin ex rel.*

---

[2] Plaintiffs do not dispute the timeliness of Advocates' motion, given the early posture of the case, but emphasize that in no case should resolution of this motion delay Plaintiffs' motion for urgent relief. Such delay would create the sort of prejudice that the timeliness prong is designed to prevent. *See, generally, In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (recognizing that a key timeliness consideration is "the prejudice that delay may cause the parties").

*Yock v. Dep't Pub. Welfare*, 701 F.3d 938, 951 (3d Cir. 2012). "The polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Advocates' claimed interests are remote, if they exist at all. Intervention as a matter of right is only granted upon a showing of a "tangible threat to the applicant's interest." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (internal quotations omitted). Advocates can show no such threat here. Advocates claim that allowing Catholic to continue serving the community in accordance with its deeply-held beliefs—as it has for decades—would "undermine[] [Advocates'] mission" by denying hypothetical third parties the ability to become foster parents. Dkt. 14, Mot. to Intervene ¶ 11. Yet Advocates have not identified a single same-sex couple— much less one connected to their organizations—who has sought, is seeking, or who plans to seek certification though Catholic. *See id.*; *see also, generally,* Dkt. 27, Mem. of Law in Support of Motion to Intervene. Instead, Advocates simply claim that someone, somewhere, may be harmed by Catholic, and that this harm would then trickle down to Advocates. *See* Dkt. 27 at 4-6. Not only is this theory of harm identical to the City's, but such speculative, trickle-down claims of injury are not the "significantly protectable" interests that intervention as a matter of right requires: Rule 24 does not create a right to "intervention for the purpose of asserting the substantive rights of others, or as recognizing for that purpose an interest based on a substantive right not belonging to the intervenor." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 465 (5th Cir. 1984) (en banc).

Advocates' real interest is not a legally protectable interest, but a preferred policy outcome. "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one

3

outcome to the other." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). This is precisely what Advocates are claiming here. Advocates can point to no facts to support their claim that affording Catholic the relief it seeks will affect their interests in a "substantially concrete fashion," either directly or indirectly. *Yock*, 701 F.3d at 951. At most, they claim an ideological interest in a preferred outcome and an economic interest in recruiting events. *See* Dkt. 27 at 4-6. These are precisely the sort of indirect, remote interests which are insufficient for intervention.

The strongest proof of this is the fact that they cannot point to any *present* harm they experience—even though the status quo at issue in this case goes back many years. If Catholic's religious beliefs and practices have not harmed Advocates or caused them injury in the last 50 years, Advocates cannot establish that such harm will happen tomorrow. "Intervention as a matter of right presents a situation where the facts assume overwhelming importance in [the] decision." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (internal quotations omitted). And the facts in this case are straightforward: Sharonell Fulton and other similarly-situated foster parents seek to prevent violations of fundamental rights and preserve a decades-long status quo. Advocates allege that preserving the status quo will harm them in the future, but do not provide—indeed, cannot provide—any evidence that they are presently harmed by exactly the same circumstances they seek to terminate. *See* Dkt. 27 at 4-7 (identifying only speculative future harms). Indeed, at the hearing the DHS Commissioner conceded that, whether Plaintiffs win or lose this case, there will be the exact same number of foster agencies available to serve prospective LGBT foster parents.[3] If Catholic loses, however, there will be one less foster agency to serve Philadelphia children in need.[4]

---

[3] Tr., Day 3, Figueroa, pg. 17.
[4] Tr., Day 4, Amato, pg. 78.

4

Advocates claim that allowing Catholic to continue serving the community in the same way it has for generations will cause children to "be denied access to loving families who are willing to care for them." Dkt. 14 ¶ 11. But they cannot identify any instance in which this has actually happened. *Cf.* Dkt. 27 at 4-7 (listing purely speculative harms which "may" occur if Plaintiffs prevail). To the contrary, the only children currently denied access to loving families are those that would have been placed in the empty home of Cecelia Paul and the 35 open spots in loving foster homes that the City refuses to fill today.

## II. The City of Philadelphia can adequately defend the proposed intervenors' purported interests.

Intervention as a matter of right must be denied unless the proposed intervenors can demonstrate that their interests are "not adequately represented by an existing party in the litigation." *Wallach*, 837 F.3d at 372 n.18. When intervenors seek to intervene alongside the government, a presumption of adequate representation applies. "[T]he presumption is particularly strong when the governmental and private interests 'closely parallel' one another, or are 'nearly identical.' In those cases, a proposed intervenor will overcome the presumption only with a 'compelling showing.'" *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018) (quoting *Virgin Islands*, 748 F.3d at 520, 525) (citation omitted). That "particularly strong" presumption applies here.

According to Advocates, the City cannot adequately represent their interests because litigating this case is not the City's only task, whereas Advocates are private organizations with a narrower focus. Dkt. 14 ¶ 16 ("[T]he City has a host of competing governmental and contractual rights, responsibilities, interests, and obligations."); Dkt. 27 at 7-9. If mere assertions of this kind were sufficient to show inadequate representation, however, then interest groups would be able to intervene as a matter of right whenever the government is a party to litigation regarding an issue

5

within their fields—a result that would turn the presumption of governmental competence on its head. On the contrary, the presumption is *strengthened* when intervention is sought by the individuals and organizations on behalf of whose interests the government is litigating. *See Virgin Islands*, 748 F.3d at 523. Thus courts routinely deny advocacy groups' motions for intervention when their interests are indistinguishable from the government's. *See*, *e.g.*, *Veasey v. Perry*, 577 F. App'x 261 (5th Cir. 2014); *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002); *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 323 F.R.D. 54 (D.D.C. 2017); *Gaskin v. Pennsylvania*, No. 94-4048, 1995 WL 329039 (E.D. Pa. May 26, 1995).

And the Intervenors' claimed interests here are identical to the interests that the government seeks to protect. They seek the same outcome: prohibiting Catholic from providing foster care services in a manner consistent with its religious beliefs. *See* Dkt. 27 at 4-6. They claim the same goals: more foster homes and more options for LGBT families. *See id.;* Dkt. 20 at 4, 13-15, 28-29 (City's brief claiming same interests). This is not a case, like those Advocates rely upon, where the government must defend broad environmental policies and competing interests. *See* Dkt. 27 at 7-9 (relying on *Kleissler* and other environmental policy cases). The Third Circuit has already rejected Advocates' interpretation of *Kleissler*. *See Pa. Gen. Energy Co., LLC v. Grant Twp.*, 658 F. App'x 37, 41 (3d Cir. 2016) (advocacy group asserting government inadequacy based on *Kleissler* "misread *Kleissler*"). Nor is it a case like *Pennsylvania*, in which the intervenors were in a "unique position" due to their involvement in related litigation and sought only to defend their narrow interest in one portion of two nationwide regulations. 888 F.3d 61-62. In both *Kleissler* and *Pennsylvania*, the government was defending the facial legality of multiple policies and so had multiple and conflicting interests, but this case involves only one set of plaintiffs who have been singled out by the City and who challenge the City's actions as applied to them. *Cf. Kleissler*,

6

157 F.3d 968 (facial challenges to two forest management plans); *Pennsylvania,* 888 F.3d at 56-57, 61 (facial challenge to two separate regulations governing different types of entities).

Nor have Advocates established inadequacy by pointing to their desire to make arguments under the Establishment Clause and Equal Protection Clause. Dkt. 27 at 9-10. In fact, the three Establishment Clause cases that Advocates cite are the same cases relied upon by the City in its own briefing. *See id.*; Dkt. 20 at 14-17, 26 (City's brief citing *Larkin*, *Teen Ranch*, and *Estate of Thornton*). The City likewise also relied upon the Equal Protection arguments in its defense. *See* Dkt. 20 at 14-17. This is not a divergence of interests, but a request for additional briefing space. This request is easily satisfied by permitting Advocates to submit an amicus brief, to which Plaintiffs do not object and which the Court has already permitted.

Also contrary to Advocates' arguments, a "significant overlap" between the interests of a primary party and an intervenor is "fatal to the [intervenor's] request for intervention." *Pa. Gen. Energy Co.*, 658 F. App'x at 41. To the extent Advocates have any interests in this case, those interests are thoroughly aligned with the City's interests and adequately represented by the City's attorneys. In fact, Advocates' interests and the City's interests are so closely aligned that the City selected the executive director of Support Center for Child Advocates as its expert witness.[5]

The executive director's role as an expert witness is itself an independent reason to deny intervention. Advocates are simultaneously testifying in this case and also claiming that their interests in this case will not receive proper attention unless they intervene. "[An] attorney, or his firm, must decide whether to serve either as advocate or as a witness in a particular case," because "the role of an advocate and of a witness are inconsistent." *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp., Inc.*, 546 F.2d 530, 538 (3d Cir. 1976). "The presence

---

[5] Tr., Day 3, Cervone, pg. 153.

of a lawyer for a party acting as an expert witness in a case would surely undermine the public's confidence in our legal system." *Jarzyna v. Home Props., L.P.*, 201 F. Supp. 3d 650, 662 (E.D. Pa. 2016). Advocates' belated attempt to fix the problem by substituting new counsel is too little, too late, and the City's expert still serves as the Executive Director for the Support Center for Child Advocates.

In short, Advocates' purported interests are identical to the City's, and Advocates have provided no evidence to overcome the presumption that the City will adequately represent those interests, something it has demonstrated great interest in doing, including by relying upon Advocates for evidence to make its case.

### III. Advocates have no grounds for permissive intervention.

Advocates have insufficient grounds for permissive intervention under Federal Rule of Civil Procedure 24(b), as well. Permissive intervention requires an intervenor to show "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Advocates can show no such common claim, as evidenced by their own admissions in their motion. *See* Dkt. 14 ¶ 16 ("Child Advocates and PFP . . . are not governmental entities and are not parties to the contract with [Catholic]."). And they have failed to show that they will suffer any harm as a result of this case, since they cannot identify any harm they have suffered to date.

Furthermore, even in cases in which common questions of law or fact do exist, the court retains the discretion to deny permissive intervention if it determines that denial would be appropriate. *Virgin Islands*, 748 F.3d at 524. Intervention would only serve to delay and complicate an already complex and urgent case, and to no avail since the outcome will not impact Advocates. Advocates' interests are entirely unrelated to the contract between Catholic and the City of Philadelphia.

8

## CONCLUSION

For the foregoing reasons, this Court should deny the Emergency Motion to Intervene by Support Center for Child Advocates and Philadelphia Family Pride.

Dated: June 29, 2018　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Mark L. Rienzi
　　　　　　　　　　　　　　　　　　　Mark L. Rienzi*
　　　　　　　　　　　　　　　　　　　Lori H. Windham*
　　　　　　　　　　　　　　　　　　　Stephanie Barclay*
　　　　　　　　　　　　　　　　　　　Nicholas Reaves*
　　　　　　　　　　　　　　　　　　　The Becket Fund for Religious Liberty
　　　　　　　　　　　　　　　　　　　1200 New Hampshire Ave. NW, Suite 700
　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　Telephone: (202) 955-0095
　　　　　　　　　　　　　　　　　　　Facsimile: (202) 955-0090

　　　　　　　　　　　　　　　　　　　Nicholas M. Centrella
　　　　　　　　　　　　　　　　　　　Conrad O'Brien PC
　　　　　　　　　　　　　　　　　　　1500 Market Street, Suite 3900
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102-2100
　　　　　　　　　　　　　　　　　　　Telephone: (215) 864-8098
　　　　　　　　　　　　　　　　　　　Facsimile: (215) 864-0798
　　　　　　　　　　　　　　　　　　　ncentrella@conradobrien.com

　　　　　　　　　　　　　　　　　　　*Counsel for Proposed Intervenor*
　　　　　　　　　　　　　　　　　　　*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2018, the foregoing document was filed pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

/s/ Mark L. Rienzi
Mark L. Rienzi
