

CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

Marcel S. Pratt
City Solicitor

Diana Cortes
Chair, Litigation Group
215-683-5038
215-683-5069 (fax)
Diana.Cortes@Phila.gov

July 11, 2018

**VIA ECF**

The Honorable Petrese B. Tucker
United States District Court for the
    Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 10106

RE:    *Fulton et al. v. City of Philadelphia et al.*, 18-CV-2075

Dear Judge Tucker:

    Defendants write in response to Plaintiffs' second post-hearing fact submission regarding the above-captioned litigation. Plaintiffs' new submission is unnecessary and inaccurate, and Defendants provide the following information to respond to the letter submitted by Plaintiffs' counsel and to correct and clarify the public record. We also respectfully request that the Court neither consider Plaintiffs' submission nor give any weight to the assertions it contains. Should the Court determine that additional information would assist it in its decision, Defendants continue to stand ready to provide documentary evidence and supplemental declarations. *See* Dkt. 47.

    Contrary to Plaintiffs' representation, the kinship care matter they reference was not urgent, and Plaintiffs have not accurately represented the underlying facts regarding the children's placement.[1] For the past year, the kinship foster parent has been caring for five children – the two elementary-school-aged siblings (her niece and nephew) as well as two other foster children and her own biological child. The siblings' placement is through a different foster care agency than CSS and Catholic is not the CUA. A few months ago, the kinship foster parent indicated that she was unable to care for five foster children on a permanent, long term basis. Because of this, the Dependency Court's Order noted that a 30-day notice would be

---

[1] Defendants only address CSS' representations regarding specific foster children herein to correct the record. CSS' representations regarding two of its employees adds nothing to CSS' testimony during this Court's hearing and needs no response.

provided after the end of the school year and a follow-up hearing was scheduled for mid-July.[2] Less than a month after the June 12 end of the school year, DHS learned that an appropriate family foster care placement with a resource parent working with one of the City's 29 other foster care agencies would be available on July 13.

DHS was in the process of finalizing that placement when James Amato of CSS wrote to DHS Deputy Commissioner Kimberly Ali on July 9, 2018. Mr. Amato informed Deputy Commissioner Ali that a foster parent CSS works with– who is currently caring for at least one foster child – had a relationship with the siblings' current kinship parent, was prepared to foster both siblings, and requested an exception. Deputy Commissioner Ali promptly reviewed this and approved the exception for placement with the CSS foster parent within twenty minutes. Contrary to CSS' representation, this was the first time that anyone had suggested to DHS that an exception to intake closure should apply. On July 5, the CUA responsible for the siblings contacted DHS' Central Referral Unit (CRU) and informed the CRU that a CSS foster family was available, but there was no suggestion that the family should be subject to an exception because of any prior relationship with the siblings. Further email correspondence reflects that CSS leadership and its counsel with Becket discussed the CSS foster parent, including CSS' belief that the parent should satisfy DHS' kinship exception requirements, on July 5 as well. However, neither CSS nor its counsel reached out to DHS leadership or the City's counsel prior to Mr. Amato's July 9 email to Deputy Commissioner Ali to suggest or request that an exception to the intake closure would apply. Had they done so on July 5 with information supporting an exception, Deputy Commissioner Ali likely could have approved the placement even sooner.

The fact that the transition to a new placement has extended shortly beyond the beginning of July does not mean that DHS, the CUA, and applicable foster agencies are not acting in the best interest of the siblings, or that there is any urgent need for an immediate transfer. Indeed, it reflects the fact that this situation was not an emergency. As we explained, the siblings' aunt, their current kinship parent, has only become an unavailable placement because she has expressed that she is unable to care for all of her foster children on a long term basis. According to the CUA, the siblings are actually currently on vacation with her, and therefore, they are not available to transition to their new placement until July 13 anyway. Further, she is willing to serve as a respite resource for the children when necessary.

In sum, we are at a loss to explain why CSS has deduced that there is urgent need to remove the children from her care immediately, described her care as "sub-optimal," and

---

[2] A 30-day notice is a written statement from a foster parent indicating that a child in their care needs to be moved to a new placement. The notice is provided for in DHS' contracts with family foster care agencies as a step in the process of discharging or removing a child that falls within that agency's care. The contract requires that DHS be given a minimum of 30 days' notice to effect a new placement. However, when the situation is not urgent – like in the case here – the notice will often provide for a longer period. And neither state law nor the contract impose any penalties on DHS for extending the 30-day period.

In this instance, the kinship foster parent sent the notice on May 22, 2018 and in the notice requests that the children be relocated by July 1, 2018. She also requests in the notice that the children be with her for a June 30, 2018 graduation party and indicates she is open to hosting them on weekends and serving as respite care for them.

suggested DHS is not acting in the best interest of the children. There is simply no indication that the children have been in a "sub-optimal placement." Indeed, if CSS believed this situation to be urgent, then Mr. Amato or CSS' counsel with the Becket Fund should have contacted DHS leadership on July 5 to request an immediate exception and inform DHS about its concerns rather than conferring with counsel first, reaching out to DHS four days later, and then filing a notice with the Court five days after CSS learned of the issue.

This Court should disregard CSS' submission and permit DHS to handle case-specific determinations in the best interest of the 6,000 children in foster care outside of this litigation and in conjunction with the oversight of Dependency Court.

Respectfully,

Diana Cortes
Chair, Litigation Group

## CERTIFICATE OF SERVICE

I hereby certify that this letter has been served electronically via ECF and is available for viewing and downloading from the ECF system.

/s/ Benjamin H. Field
Benjamin H. Field
Deputy City Solicitor
Affirmative and General Litigation
